**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANISHA YOUNG, individually and on behalf of her daughter, Z.K., a minor, et al.** | : : | **CIVIL ACTION** |
| **Plaintiff,** | : : | |
| **v.** | : : | **No. 19-1174** |
| **TEMPLE UNIVERSITY HOSPITAL, et al.,** | : : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **SHANISHA YOUNG, individually and on behalf of her daughter, Z.K., a minor, et al.** | : : | **CIVIL ACTION** |
| **Plaintiff,** | : : | |
| **v.** | : : | **No. 19-1714** |
| **TEMPLE UNIVERSITY HOSPITAL, et al.,** | : : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                 **October 28, 2019**

## MEMORANDUM

These consolidated cases involve a claim of medical malpractice by Plaintiffs Shanisha Young and Atiba Kenyatta, individually and on behalf of their daughter Z.K. (collectively, "Plaintiffs"), against Defendant Shwetha Shrivatsa, M.D. ("Dr. Shrivatsa"), and Defendants Temple University Hospital, Inc., Temple University of the Commonwealth System of Higher Education, Temple University Health System, Inc., Erin Cavanaugh, M.D., and Scott E. Jordan, M.D. (collectively, the "Temple Defendants"). The Temple Defendants have filed cross-claims for contribution, common law indemnity, and contractual indemnity against Dr. Shrivatsa.

The lengthy procedural history in this case, resulting from Dr. Shrivatsa's status as a deemed federal employee, has led to the three motions now pending before me. In two of the motions, the United States seeks to substitute itself for Dr. Shrivatsa and to dismiss all claims and cross-claims against it. In the third motion, the Temple Defendants move to dismiss the second action—Civil Action No. 19-1714—as duplicative of the first or, alternatively, to dismiss the claims of Plaintiffs Shanisha Young and Atiba Kenyatta as time-barred. For the reasons set forth in detail below, these motions will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Although this matter was commenced over a year and a half ago, it unfortunately remains in the pleading stages.

According to the Complaints, Plaintiff Shanisha Young was admitted to Temple University Hospital ("Temple") on February 27, 2016 for the birth of her child. Defendant Dr. Shrivatsa was the attending physician. Plaintiffs allege that Dr. Shrivatsa's failure to perform a timely c-section resulted in severe brain damage to the child and scarring on Ms. Young's bladder. (Civ. A. No. 19-1174, Compl. ¶¶ 12–87; Civ. A. No. 19-1714, Compl. at "Pertinent Facts" ¶¶ 1–76.)

On February 27, 2018, Plaintiffs sued Dr. Shrivatsa and the Temple Defendants in state court. The Temple Defendants removed the matter to federal court, on July 2, 2018, alleging that Dr. Shrivatsa was a federal employee of a federally-funded health care clinic and, thus, was subject to the exclusive jurisdiction of the federal courts under the Federal Tort Claims Act ("FTCA"), 42 U.S.C. § 233. The removed case was captioned as <u>Young v. Temple Univ.</u>, Civ. A. No. 18-2803. The Temple Defendants filed an Answer to the Complaint, as well as cross-claims against Dr. Shrivatsa for contribution, common law indemnity, and contractual indemnity.

On August 9, 2018—after the action had already been removed—the United States Attorney issued a Certification, pursuant to 28 U.S.C. § 2679(d)(1), officially deeming Dr. Shrivatsa a employee of the Public Health Service acting within the scope of her federal employment with respect to the acts or omissions at issue in the present action.

On January 3, 2019, I remanded the case to state court for failure to follow the proper removal procedure under 42 U.S.C. § 233(a). See Young v. Temple, No. 18-2803, 2019 WL 109388 (E.D. Pa. Jan. 3, 2019). I determined that, under § 233(a), the United States, not the Temple Defendants, had to remove the matter to federal court, but only *after* issuing the requisite certification. Id.

On March 20, 2019, this case was again removed to federal court, this time by the United States proceeding under the Certification by the U.S. Attorney that Dr. Shrivatsa was acting within the scope of her federal employment with Greater Philadelphia Health Act ("GPHA"), a federally-funded health care clinic. This matter was captioned under Civil Action No. 19-1174 ("Young I").

On April 18, 2019, Plaintiffs filed a new complaint in federal court, under Civil Action No. 19-1714, setting forth the same claims against the same Defendants ("Young II"). This action also included a claim against the United States as the employer of Dr. Shrivatsa, and alleged that administrative remedies had been exhausted. On May 7, 2019, I administratively consolidated Young I and Young II.

Subsequently, on May 17, 2019, the United States in Young I—acting pursuant to the FTCA, 42 U.S.C. § 233(a)— moved to substitute itself as a defendant for Dr. Shrivatsa, and to dismiss any claims against the United States for failure to exhaust administrative remedies. Plaintiffs opposed this substitution claiming that Dr. Shrivatsa was not acting within the scope of her employment with GPHA during the events in question. The Temple Defendants did not oppose

the substitution of the United States for Dr. Shrivatsa or the dismissal of the claims against the United States for failure to exhaust administrative remedies, but argued that their cross-claims against the United States remained valid and formed an independent basis for federal jurisdiction.

Thereafter, on July 1, 2019, the United States in Young II, moved to substitute itself in place of Dr. Shrivatsa and to dismiss all claims against it as time-barred under the Federal Tort Claims Act's statute of limitations. The Temple Defendants also moved to dismiss Young II as duplicative of Young I, and as time-barred under the state statute of limitations. On August 27, 2019, I held an on-the-record phone conference to consider the parties' arguments.

## II.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Id. at 302 n.3 (quotation omitted).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. Mortensen, 549 F.2d at 891. In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. Id. With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that

evidence. Petruska, 462 F.3d at 302 n.3; see also Gould Elecs., Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Petruska, 462 F.3d at 302 n.3 (quoting Mortenson, 549 F.2d at 891).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they

plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

Finally, in deciding a motion to dismiss under the Federal Rules of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

## III. DISCUSSION

### A. United States' Motion to Substitute

The United States first argues that it should be substituted in place of Dr. Shrivatsa in both Young I and Young II. It posits that the Certification from the United States Attorney conclusively proves that, at the time of the delivery of Plaintiff Young's baby, Dr. Shrivatsa was working for GPHA, a federally-funded health care clinic, thus making the United States the proper defendant. Plaintiffs challenge the veracity of the United States' Certification that Dr. Shrivatsa was actually working within the scope of her federal employment at the time of the events in question.

The Federal Employees Liability Reform and Tort Compensation Act of 1988 "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)); see also McNiff v. Asset Mgmt. Specialists, Inc., 337 F. Supp. 2d 685, 691 (E.D. Pa. 2004) ("The only proper defendant in an action brought pursuant to the Federal Tort Claims Act is the United States of America."). Therefore, where an action is brought against an employee of the United States that arose from the employee's actions or omissions within the

scope of his office or employment, the United States should be substituted as the defendant against whom the plaintiff may proceed. See generally 28 U.S.C. § 2679(d).

One means by which this substitution of parties may occur is certification by the United States Attorney that the individual defendant was an employee of the United States acting within the scope of his or her employment. The Act provides that:

> Upon certification by the Attorney General that the defendant was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all reference thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1); see 28 C.F.R. § 15.4(a) ("The United States Attorney for the district where the civil action or proceeding is brought . . . is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose.").

Following certification that a federal employee sued for a common law tort was acting within the scope of his employment, "the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act." Osborn, 549 U.S. at 230; see also Lackaro v. Kao, 748 F. Supp. 2d 445, 449 (E.D. Pa. 2010). Certification by the United States Attorney General or United States Attorney "is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment." Melo v. Hafer, 13 F.3d 736, 742 (3d Cir. 1994) (quoting Schrob v. Catterson, 967 F.2d 929, 936 (3d Cir. 1992)).

The scope certification, however, is rebuttable and subject to judicial review. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 435–36 (1995); see also Schrob, 967 F.2d at 936. If a plaintiff

disputes the veracity of a certification, "the burden then shifts to the plaintiff, who must come forward with specific facts rebutting the certification." Schrob, 967 F.2d at 936. If there is a genuine issue of fact material to the scope of the employment question, "a limited amount of fact finding is necessary," which in turn necessitates "an opportunity for limited discovery, and, if necessary, an evidentiary hearing." Id. at 936; see also Lackro v. Kao, 748 F. Supp. 2d 445, 449–50 (E.D. Pa. 2010) ("The need for discovery following a certification of employment turns on whether the plaintiff challenging the U.S. Attorney's certification can proffer specific facts to rebut the certification."). If, however, "the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits." Schrob, 967 F.2d at 936.

The determination of whether a government employee was acting within the scope of his/her federal employment during the challenged conduct is cabined by the relevant state law. Sharratt v. Murtha, 437 F. App'x 167, 171–72 (3d Cir. 2011). Pennsylvania has adopted the Restatement (Second) of Agency, which considers conduct within the scope of employment if it (a) is the kind the employee is employed to perform; (b) occurs substantially within the time and space limits, and (c) is actuated, at least in part, by a purpose to serve the master. Id.

Here, Plaintiffs challenge the United States' Certification and contend that the evidence shows Dr. Shrivatsa was not acting in the scope of her federal employment with respect to the events at issue. In support of this challenge, Plaintiffs identify three factual issues that purportedly preclude a conclusive "scope" finding. First, they note that the Physician Employment Agreement between GPHA and Dr. Shrivatsa indicates that the scope of Dr. Shrivatsa's employment entails care at GPHA sites and for GPHA patients at Temple University Hospital. (Civ. A. No. 19-1174, ECF No. 25, Ex. D, at USA 000055.) Plaintiff Young stresses that she was never a GPHA patient,

but instead "was a private patient seeking care from Temple University Hospital." (Civ. A. No. 19-1174, ECF No. 26, at p. 6.) Second, Plaintiffs note that the Physician Employment Agreement references a "Scope of Services"—attached as Exhibit A to the Agreement—and a "list of [] procedures" Dr. Shrivatsa should perform at Temple University Hospital for GPHA patients—attached as Exhibit B to the Agreement. Plaintiff asserts that neither of those documents was included as an exhibit by the United States, thus rendering the "scope" of Dr. Shrivatsa's employment with GPHA unclear. Finally, Plaintiffs contend that there is a discrepancy as to when Dr. Shrivatsa actually began her employment with GPHA. Dr. Shrivatsa's Declaration states that she "has been employed by Greater Philadelphia Health Action since August 26th, 2013," but the Agreement for her alleged employment is dated approximately eight months prior, on December 11, 2012. (compare Civ. A. No. 19-1174, ECF No. 25, Ex. 2, Decl. of Shwetha Shrivatsa ("Shrivatsa Decl."), ¶ 2, with id., Ex. D, at USA 000055.)

These facts could perhaps raise questions about Dr. Shrivatsa's employment arrangement with GPHA. However, I conclude that these facts are insufficient to rebut the *prima facie* Certification, augmented by the following evidence of record establishing that Dr. Shrivatsa was indeed working within the scope of her federal employment with GPHA.

First, as of the time of the events at issue, Dr. Shrivatsa was, according to the United States Attorney's Certification, an employee of GPHA, a federally-funded healthcare clinic. This fact is undisputed.

Second, Dr. Shrivatsa's employment agreement with GPHA precluded her from engaging in the practice of medicine "except as an employee of GPHA unless otherwise authorized in writing by GPHA and subject to such special conditions as GPHA may establish." (See Civ. A. No. 19-1174, ECF. No. 25, Ex. D, ¶ 4(b).)

Third, under a Physician Services Agreement with Temple Physicians, Inc. ("TPI"), GPHA contracted out Dr. Shrivatsa's services to Temple University Hospital. Pursuant to both this Agreement and her employment contract with GPHA, Dr. Shrivatsa was required to provide services at Temple University Hospital, but was expressly deemed to be *only* an employee of GPHA, regardless of whether her patients were GPHA patients.[1] (See Physician Services Agreement ¶ 5.)

Fourth, the billing statement for Ms. Young's procedure at Temple University Hospital lists Dr. Shrivatsa as the "Physician or Supplier," Temple University Hospital as the "Service Facility Location," and "Greater Philadelphia Health Action, Inc. as the "Billing Provider." (Civ. A. No. 19-1174, ECF No. 27-2.) Dr. Shrivatsa's 2016 W-2 statements further show that she was employed exclusively by GPHA. (Civ. A. No. 19-1174, ECF No. 27-2.) There is no evidence that Temple University Hospital ever paid Dr. Shrivatsa for her services.

Lastly, since the filing of the Motion to Substitute, the United States has provided the full Physician Employment Agreement, together with its exhibits. Plaintiff has pointed to nothing in

---

[1]  Such services to non-GPHA patients were explicitly contemplated by the regulations for the Public Health Services Act, which regulate such federally-funded health centers. Under 42 U.S.C. § 233(g)(1)(B), "[t]he deeming of any entity or . . . employee . . . of the entity to be an employee of the Public Health Service for purposes of this section shall apply with respect to services provided—(i) to all patients of the entity, and (ii) subject to subparagraph (C), to individuals *who are not patients of the entity*." Id. Section 233(g)(1)(C) then goes on to explain that:

> Subparagraph (B)(ii) applies to *services provided to individuals who are not patients of an entity* if the Secretary determines . . . that the provision of the services to such individuals—
> . . .
> (i)    are otherwise required under an employment contract (or similar arrangement) between the entity and an officer, governing board member, employee, or contractor of the entity.

Id. (emphasis added).

those exhibits that contradicts the Certification that Dr. Shrivatsa was acting in the scope of her federal employment at the time of the events at issue.

In short, I find that Plaintiffs have not rebutted the *prima facie* showing that Dr. Shrivatsa was acting in the scope of her employment as a federal employee. Plaintiffs have produced no evidence to establish that Dr. Shrivatsa was ever employed by, paid by, or permitted to perform work on behalf of Temple University Hospital. Moreover, Dr. Shrivatsa's treatment of Plaintiff Young was (a) the kind Dr. Shrivatsa was employed to perform for GPHA; (b) occurred substantially within the time and space limits of her employment with GPHA; and (c) was actuated, at least in part, by a purpose to serve GPHA. See Sharratt, 437 F. App'x at 171–72 (setting forth three considerations for scope of employment decisions under Pennsylvania law).

Nor do I find that Plaintiffs have created a genuine issue of material fact on this question as to warrant limited discovery or any further hearing. See Lackro, 748 F. Supp. 2d at 451 ("[T]here is no right to (or need for) discovery under this standard unless the plaintiff contesting the motion meets the rebuttal standard."); Wuterich v. Murtha, 562 F.3d 375, 382 (D.D.C. 2009) ("[T]here is no right to even limited discovery . . . unless and until a plaintiff alleges sufficient facts to rebut the Government's certification."); Borawski v. Henderson, 265 F. Supp. 2d 475, 482 (D.N.J. 2003) ("[T]he district court should only permit discovery or conduct an evidentiary hearing where there is a 'genuine issue of fact material to the scope of employment question.'").

As Plaintiff has not sufficiently rebutted the certification that Dr. Shrivatsa was a federal employee acting within the scope of her federal employment at the time of the events in question, I will grant Dr. Shrivatsa's Motion to Substitute in both Young I and Young II, dismiss the claims against her, and substitute the United States as a defendant in her stead.

## B.    Failure to Exhaust Administrative Remedies

The United States next argues that, once it is substituted in as a defendant for Dr. Shrivatsa, all of Plaintiffs' claims against it in both Young I and Young II must be dismissed for failure to exhaust administrative remedies.

The FTCA mandates that an action "shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency. . . ."  28 U.S.C. § 2675(a).  The United States Supreme Court has expressly instructed that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). This administrative exhaustion "must be complete *before* a party may institute a civil action in District Court under the FTCA."  Wadhwa v. Nicholson, 367 F. App'x 322, 325 (3d Cir. 2010) (emphasis in original).

Because the requirement of presentation is among the terms defining the United States' consent to be sued, it is jurisdictional and cannot be waived.  White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457 (3d Cir. 2010) (citation omitted).  Thus, "[f]ailing to follow this procedure deprives federal courts of subject matter jurisdiction." Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011).  Such requirements are "strictly construed" and a failure to exhaust administrative remedies prior to filing an FTCA claim requires dismissal under Rule 12(b)(1).  Id.

In Young I, Plaintiffs have not alleged—nor could they—that they presented their claims to the Department of Health and Human Services ("HHS") before initiating this action on May 31, 2018.  Plaintiffs nonetheless contend that they are entitled to equitable tolling to allow them to exhaust administrative remedies.  Equitable tolling, however, provides no relief where a plaintiff fails to exhaust administrative remedies *prior* to initiating a case.  "The jurisdictional requirement

[of exhaustion] must be strictly construed and exceptions are not to be implied by the courts."
Galicia v. United States, No. 15-7077, 2015 WL 8513986, at *3 (D.N.J. Dec. 11, 2015) (citing
Hause v. United States, 378 F. App'x 158, 159 (3d Cir. 2010)). Equitable tolling, therefore, cannot
excuse a failure to exhaust administrative remedies prior to filing an action. Walker v. U.S., 616
F. App'x 497, 500 (3d Cir. 2015).

Young II, however, presents a different scenario. The United States concedes that
Plaintiffs submitted an FTCA administrative torts claim to HHS on August 13, 2018. (Young II
Compl. ¶¶ 15–16; Young II, ECF No. 12, at p. 3.) As of February 13, 2019, six months after the
FTCA notice was filed, HHS had not rendered a decision on the claim, thereby exhausting
Plaintiffs' administrative remedies and allowing them to file a lawsuit. See 28 U.S.C. § 2675(a)
("The failure of an agency to make final disposition of a claim within six months after it is filed
shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for
purposes of this section."). Plaintiffs then filed Young II on April 18, 2019. Because Plaintiffs
satisfied the exhaustion requirement prior to filing Young II, I retain subject-matter jurisdiction
over that case and will not dismiss Plaintiffs' claims against the United States on that ground.

### C. Timeliness of Plaintiffs' Exhaustion of Remedies

Having conceded that the exhaustion requirement has been satisfied in Young II, the United
States nonetheless seeks to dismiss Plaintiffs' claims against it as untimely. It argues that, although
Plaintiffs presented and exhausted an administrative claim, the filing of that claim occurred at least
five months past the prescribed statute of the limitations, thus rendering the ensuing tort claim
untimely.

The FTCA provides that, "[a] tort claim against the United States shall be forever barred
unless it is presented in writing to the appropriate Federal Agency within two years after such

claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).  Thus, "the FTCA imposes a twofold obligation of timeliness upon litigants." Davenport v. U.S., No. 14-742, 2014 WL 10044912, at *5 (M.D. Pa. Oct. 2, 2014).  There is a two-year period in which a claim must be tendered to the affected federal agency for its consideration.  Id. (citing Wadhwa, 367 F. App'x at 325).  Once the agency has acted upon the administrative claim, the plaintiff then has six months in which to proceed to court.  Id.   Both limitations periods under § 2401(b) must be satisfied in order for an FTCA complaint to be timely. Id.

Here, the medical negligence claim accrued, at the latest, on March 2, 2016, the date the minor-Plaintiff was diagnosed with a brain injury as a result of the delayed c-section.  (Civ. A. No. 19-1714, Compl. ¶¶ 71–72); see United States v. Kubrick, 444 U.S. 111, 119–122 (1979) (holding that a claim of medical malpractice under the FTCA accrues when a plaintiff possesses the facts such that, as a reasonable person, he or she should have known of the malpractice).  Accordingly, under the limitations period set forth above, Plaintiffs had two years—*i.e.* until March 2, 2018— in which to file their administrative tort claims.  Plaintiffs, however, did not file any administrative tort action until August 13, 2018—more than five months after the limitations period expired. Accordingly, it is untimely under 28 U.S.C. § 2401(b).

That determination, however, does not end the inquiry as the FTCA's statute of limitations may be subject to equitable tolling.  United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1633 (2015) ("[E]quitable tolling is available in suits against the Government."); see Hedges v. United States, 404 F.3d 744, 748 (3d Cir. 2005) (federal courts apply equitable tolling to wide range of cases against the Government, including FTCA claims.").  Equitable tolling requests are judged

by exacting standards and mere excusable neglect is insufficient.  Id. at 751.  "'[A] plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim.'"  Santos, 559 F.3d at 197 (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990)).

In FTCA actions, "[i]t is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States."  Santos, 559 F.3d at 197–98; see also Jones v. United States, 366 F. App'x 436, 439 (3d Cir. 2010).  Consequently, "[e]quitable tolling may apply to FTCA claims in three instances: '(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.'"  Id. at 439–40 (quoting Hedges, 404 F.3d at 751).

The United States Court of Appeals for the Third Circuit addressed a claim of equitable tolling in a case factually analogous to the present matter.  In Santos v. United States, 559 F.3d 189 (3d Cir. 2009), the plaintiff filed a medical malpractice action against a hospital and four health care providers in state court and under state law.  Id. at 191.  Prior to filing the complaint, the plaintiff's counsel performed a public records search on the hospital (which was a private corporation), corresponded with the hospital, obtained the plaintiff's medical records, visited the site, and reviewed pertinent records onsite.  Id.  In addition, the attorney retained various experts— including a family practice expert, a dental expert, a professor of pediatric otolaryngology, and a board-certified spinal surgeon—all of whom prepared expert reports.  Id.  Plaintiff's counsel's investigations, however, did not reveal that the allegedly negligent healthcare workers and their employer (the hospital) all had been deemed employees of the United States pursuant to the Public

Health Service Act.  Id. at 191–92.  By the time the plaintiff had filed her suit—which was within the state statute of limitations—the federal statute of limitations for exhausting administrative remedies under the FTCA had elapsed.  Id. at 192.  The District Court noted that it was not clear whether the plaintiff knew or should have known that the hospital received federal funds, but nevertheless found that the plaintiff "failed to exercise due diligence by attempting to ascertain the federal status of her health care providers."  Id. at 200.

In reversing the District Court, the United States Court of Appeals for the Third Circuit held that equitable tolling was appropriate.  Id. at 197–98.  The Court remarked that the plaintiff's "compliance with state law and preparation of her case . . . evidence her general diligence and thus are significant, even though her diligence in itself could not overcome her failure to identify [the hospital] and its personnel as federal employees."  Id. at 198.  The Court further found the plaintiff's belief that the hospital and its employees were subject to Pennsylvania law to be "far from a baseless assumption" as the hospital "apparently looked like a private clinic, and except for FTCA purposes the clinic and its employees were private actors, rather than federal employees."  Id. at 200.  The Court also noted that the plaintiff "based her implicit conclusion that [the hospital] and its employees could be liable under state law on inquiries, reviews of records, and other contacts with York Health."  Id. at 200–01.  Rejecting the Government's argument that the plaintiff could have ascertained the hospital's federal status from its website, the Court stated that although the website "indicated that [the hospital] received partial federal financial support from the Government[,] . . . [it] would not reveal to a reasonably diligent plaintiff that its doctors and clinics had been deemed federal employees under the Public Health Service Act, 42 U.S.C. § 233(g)–(n)."  Id. at 201.

Ultimately, the Third Circuit rejected any argument that the plaintiff should have directly inquired of the hospital whether it was a deemed federal employee. Id. at 202. The Court's reasoning in applying equitable tolling is particularly applicable to the case before me:

> As a practical matter, York Health's federal status, if not covert, was at least oblique. Of course, Santos faces her statute of limitations barrier because of the Government's failure to disclose that physicians . . . who provide services in private voluntary hospitals and in what appear to be private clinics, are de jure federal employees. Patients receiving such treatment are not aware, because they are never told or put on any notice, that the clinics they attend are government-funded or that doctors treating them are government employees. Such an omission does not rise to the level of fraud. Nevertheless, by not formulating a regulation that would require notice to a patient that the doctor rendering service to him is an employee of the United States, the Department of Health & Human Services has created a potential statute of limitations trap in states [that] may provide a longer period of time than the FTCA to file a complaint. The number of cases in which the United States has sought to take advantage of this trap suggests that it is aware of the consequences of its failure to disclose the material facts of federal employment by doctors who might reasonably be viewed as private practitioners. This conduct, if anything, is more problematic than the non-disclosure that justified invoking the doctrine of equitable tolling in [an earlier case]. . . .

> Here, though York Health's website indicated that it received federal, state, local, and charitable funding, it did not provide notice to Santos that York Health and its employees were federal employees covered by the FTCA. And the Government has not identified, at least to us, any publicly available sources of information from which Santos could have learned this critical fact or, even if the information had been available, what circumstances should have led her to inquire into York Health's federal status for purposes of the FTCA. We reiterate that Santos correctly identified the allegedly negligent healthcare providers, determined that they were employees of York Health, and performed a public-records search on York Health. Santos's counsel also visited the clinic's facilities, corresponded with the clinic, and reviewed her medical records. But these inquiries did not reveal that the apparently private York Health and its employees had been deemed to be federal employees subject to the FTCA. And while Santos conceded that "the clinic did nothing to affirmatively mislead her as to its federal status," Santos, 523 F.Supp.2d at 443, such affirmative misconduct

> is not required to find that she exercised due diligence sufficient for
> equitable tolling to apply.

Id. at 202–03 (internal quotations omitted).

Here, despite the Third Circuit's skepticism about this "potential statute of limitations trap" where a plaintiff has no notice of the federal employment status of her doctor, the Government nonetheless strenuously opposes the application of equitable tolling. Guided by Santos's reasoning, I find that Plaintiffs have set forth sufficient facts showing that they diligently investigated their claim prior to filing suit and were prevented "in some extraordinary way" from discovering that Dr. Shrivatsa was a federal employee.[2] Jones, 366 F. App'x at 439–40. Numerous pieces of evidence support this conclusion:

- Prior to filing suit, Plaintiffs' counsel, like counsel in Santos, ordered medical records from Temple University Hospital, had the records reviewed by expert physicians, identified the medical professionals involved in the treatment, and searched for publicly available information on those professionals. None of this information revealed that Dr. Shrivatsa was a federal employee.

- Plaintiff neither treated at GPHA nor was ever a patient of GPHA.

- Public information from Temple University Hospital's website, near the time of the incident and the filing of the Complaint, listed Dr. Shrivatsa as a staff physician of Temple Department of Obstetrics, Gynecology & Reproductive Sciences, without any indication that she was a federal physician.[3] (ECF No. 19-1714, Doc. No. 20, Ex. B.)

---

[2]     The United States argues that Plaintiffs fail to include factual allegations in their Complaint demonstrating an entitlement to equitable tolling or establishing diligence or extraordinary circumstances justifying their tardiness. In so arguing, however, it cites no authority for the proposition that equitable tolling must be pled in the Complaint. Indeed, the United States' Motion is brought as a "factual" attack under Rule 12(b)(1), which allows the court to consider evidence outside the pleadings and weigh that evidence. Petruska v. Gannon Univ., 462 F.3d 299, 302 n.3 (3d Cir. 2006). The United States itself relies on substantial evidence outside the record in support of their Motion to Substitute and to Dismiss.

[3]     The United States references the Temple University website as of June 28, 2019, which shows that Dr. Shrivatsa's office is a GPHA location. But, as Plaintiffs correctly point out, however, that webpage was altered since the relevant time period. Temple's website as of August 2018 did not reveal that Dr. Shrivatsa had an office at a federally-funded clinic. Rather, it showed only that she was a physician with the Temple Department of Obstetrics, Gynecology &

- Plaintiffs' counsel's search of Philadelphia Court dockets revealed that Dr. Shrivatsa was sued multiple times in her capacity as a physician at Temple Hospital, without any indication that she was a federal employee. (See Civ. A. No. 19-1714, ECF No. 20, Ex. C, Drayton v. Shrivatsa, et al. (suit against Dr. Shrivatsa without substitution by United States and where Dr. Shrivatsa was represented by Temple University Hospital lawyers); Rosado v. Temple University Hospital (suit against Dr. Shrivatsa and Temple with no substitution of United States; case voluntarily dismissed); Mercado v. Lafayette, et al., (Dr. Shrivatsa and Temple sued; case removed to federal court; case remanded to state court and discontinued).)[4]

- Plaintiff Young sought treatment from Temple University Hospital, a private hospital. Her first involvement with Dr. Shrivatsa was during the delivery of her baby. At no point did either Dr. Shrivatsa or the Temple Defendants disclose that Dr. Shrivatsa was a federal employee working under contract at Temple University Hospital.

- Dr. Shrivatsa's employment contract with GPHA was a private contract and not publicly available. Indeed, the United States has identified no publicly-available source of information from which Plaintiffs could have learned that Dr. Shrivatsa was a federal employee or, "even if the information had been available, what circumstances should have led [them] to inquire into [Dr. Shrivatsa's] federal status for purposes of the FTCA."[5] Santos, 559 F.3d at 203.

- Unlike in Santos, where the hospital's website at least indicated that it received federal, state, local, and charitable funding, the United States has identified nothing on the

---

Reproductive Sciences and a "Clinical Assistant Professor" at Temple University. (ECF No. 19-1714, Doc. No. 20, Ex. B.)

[4] The United States claims that Plaintiffs should have been aware of A.M. v. Lafayette, E.D. Pa. No. 16-4495 (Aug. 16, 2016). In that case, which occurred two years prior to the filing of Young I, the United States removed another birth injury case that occurred at Temple where Dr. Shrivatsa had delivered the minor-plaintiff via vaginal delivery. The United States substituted itself for Dr. Shrivatsa.

As Plaintiffs point out, however, the mother-plaintiff in A.M. sued the federally-funded health care clinic and Dr. Shrivatsa, as a medical provider at that clinic, and therefore should have known that the United States was the proper defendant. (ECF No. 19-1714, ECF No. 20, Ex. E, Compl. ¶ 17.) By contrast, Plaintiff here was never a patient of GPHA and, thus, would have had no indication that she was a patient of a federal employee.

[5] The United States argues that equitable tolling should not apply because Plaintiffs should have known, on an abstract level, that "doctors can be deemed employees of the Public Health Service even if they practice at hospitals or seemingly private institutions." (Civ. A. No. 19-1714, Doc. No. 12, a p. 12.) If that fact alone were sufficient to preclude equitable tolling, then equitable tolling would never apply because, in any medical case, there is a possibility that the health care provider is a federal employee.

Temple website indicating that Temple University Hospital received federal, state, and local funding, let alone that doctors practicing there could be federal employees.

Ultimately, "there would be something fundamentally inequitable about refusing to apply equitable tolling in this case, where the plaintiff[s] ha[ve] consistently acted with dispatch, only to find [themselves] trapped between the Scylla of the FTCA's exhaustion requirement and the Charybdis of the bar of the statute of limitations." Turner v. U.S., No. 14-750, 2014 WL 10044916, at *8 (M.D. Pa. Nov. 4, 2014). The record before me reflects that Plaintiffs undertook a diligent investigation prior to filing their state court action on February 26, 2018. At the time, there was no information a reasonably diligent plaintiff could have discovered that would have indicated that Dr. Shrivatsa was acting in her capacity as a federal employee while serving as the attending physician at a private hospital. Within four days after the United States Attorney provided a certification that Dr. Shrivatsa was a federal employee, Plaintiffs commenced an administrative action to exhaust administrative remedies and, six months later, filed Young II in an abundance of caution. Even then—absent production of the full employment agreement—legitimate questions remained as to whether Dr. Shrivatsa was acting in the scope of her federal employee during the events at issue. Denial of equitable tolling in the face of such diligence, and in the absence of any publicly-available sources of information regarding Dr. Shrivatsa's status, would unfairly deny Plaintiffs an opportunity to litigate potentially-meritorious negligence claims. [6]

---

[6]     In an effort to defeat the application of equitable tolling, the United States cites the case of Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750 (2016). In that matter, the Supreme Court declined to apply equitable tolling where the plaintiff proceeded under a mistaken belief that it was not required to exhaust administrative remedies. Id. at 756–57. The Court remarked that this belief was not an obstacle beyond the plaintiff's control and, thus, did not warrant equitable tolling. Id. at 757.

    That case is distinguishable from the instant matter. Unlike in Menominee where the plaintiff could have discovered its misconception about the legal requirements, Plaintiffs here could not have, even with the exercise of reasonable diligence, determined that Dr. Shrivatsa was operating as a federal employee when delivering Plaintiff Young's baby at Temple University Hospital.

I thus conclude that equitable tolling is appropriate and will deny the United States' Motion to Dismiss Young II for failure to timely exhaust administrative remedies.[7]

### D. The United States' Motion to Dismiss the Temple Defendants' Cross-Claims

Given the dismissal of Plaintiffs' claims against the United States in Young I for lack of subject-matter jurisdiction, the United States now argues that I lack subject-matter jurisdiction over the Temple Defendants' cross-claims against it. The United States posits that where a court dismisses a plaintiff's claim for lack of subject-matter jurisdiction, it should also dismiss any cross-claims that depend on ancillary federal jurisdiction to the dismissed claims "because failure to do so would work an impermissible expansion of federal subject-matter jurisdiction." (ECF No. 19-1174, Doc. No. 25-1, at p. 10.) Moreover, The United States presses that because there is no judgment against it by Plaintiffs, the Temple Defendants' claims for contribution and indemnity cannot accrue and, therefore, cannot provide an independent basis for jurisdiction. For the following reasons, I disagree and will retain subject-matter jurisdiction over the cross-claims.

As noted above, federal district courts have exclusive jurisdiction over tort actions brought against an employee of the United States acting within the scope of her employment. 28 U.S.C. § 1346. "This exclusive jurisdiction extends to claims brought against the United States for

---

[7]    In an alternative argument, Plaintiffs contend that their claims in Young I should be saved under an amendment to the FTCA, 28 U.S.C. § 2679(d)(5). Pursuant to this provision, "[w]henever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for [failure to exhaust administrative remedies], such a claim shall be deemed to be timely presented under section 2401(b) of this title if–(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action." Id.; Santos, 559 F.3d at 193–94.
    The parties dispute the applicability of this savings provision to the present case. Moreover, both parties recognize that it would only apply to Young I, over which I do not have jurisdiction, and would not save Young II. As I have found that equitable tolling applies, I need not address this argument.

contribution as joint tortfeasors." Rodgers v. Se. Pa. Transp. Co., No. 06-1640, 2006 WL 2924562, at *1 (E.D. Pa. Oct. 5, 2006).

In Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit explained that a contribution cross-claim brought against the Red Cross, a federal entity, may still proceed in federal court even when the plaintiff no longer had a claim against the Red Cross. Id. at 684. The plaintiff in that case brought suit to recover damages from a hospital and the Red Cross as a result of a blood transfusion, and the hospital cross-claimed against the Red Cross. Id. at 673. After the plaintiff settled with the Red Cross, the district court dismissed the Red Cross entirely from the suit and remanded the case to state court. Id. at 674. The Third Circuit reversed, finding that because the Red Cross charter "confers federal jurisdiction over civil cases to which Red Cross is a party," there was "no doubt" that the federal district court had an independent basis of jurisdiction over the cross-claim against the Red Cross, even though the plaintiff no longer had a claim against the Red Cross. Id. at 684.

Similarly, in the case of Tomlin v. Pease, No. 14-202, 2014 WL 1340624 (E.D. Pa. Apr. 4, 2014), the plaintiff brought tort claims in state court against a number of defendants, asserting that their medical negligence caused her lung cancer to worsen. Id. at *1. The United States certified that four of the defendants were federal employees, successfully substituted itself in their place, and removed the case to federal court under the FTCA. Id. The United States then moved to dismiss the plaintiff's claims for failure to exhaust administrative remedies. Id. at *2. While that motion was pending, the remaining defendants filed cross-claims against each other and against the United States for contribution and indemnity. Id. After the United States' motion to dismiss the plaintiff's claims against it was granted, the United States moved to dismiss the cross-claims,

asserting that the court's jurisdiction over those claims was supplemental to its jurisdiction over the plaintiff's FTCA claims, and that the court no longer retained jurisdiction. Id. at *3.

The court denied the United States' motion and exercised supplemental jurisdiction over both the plaintiff's claims against the non-federal defendants and the cross-claims between the non-federal defendants and the United States. Id. at *4. The court reasoned that, similar to Carr, "FTCA cross-claims must proceed in federal court regardless of whether the plaintiff has a claim pending against the United States." Id. It held that "[t]he cross-claims against the United States must be heard in federal court, and the remaining claims [by the plaintiff] are part of the same case or controversy and derive from a common set of facts." Id. at *6; see also Rodgers v. Se. Penn. Transp. Co., No. 06-1640, 2006 WL 2924562, at *2 (E.D. Pa. Oct. 5, 2006) (finding supplemental jurisdiction over cross-claims for contribution against the United States brought under the FTCA even where the plaintiff's claims against the United States were dismissed for lack of jurisdiction).[8]

Here, the Temple Defendants' cross-claims against the United States for indemnity and contribution arise out of Plaintiffs' negligence claims against all Defendants. Although Plaintiffs' negligence claims against the United States in Young I will be dismissed, the Temple Defendants' cross-claims against the United States find an independent basis of federal jurisdiction. This is because the FTCA confers federal jurisdiction over cases in which the United States is a party. 28

---

[8]        The United States cites Fairview Park Excavating v. Al Monzo Constr. Co., 560 F.2d 1122 (3d Cir. 1977) for the proposition that where a court dismisses a plaintiff's claim for lack of subject-matter jurisdiction, it should also dismiss any cross-claims that depend on ancillary federal jurisdiction to the dismissed claims because failure to do so would work an impermissible expansion of federal subject matter jurisdiction. In Fairview, however, the cross-claim was based upon ancillary jurisdiction and did not have an independent basis for federal jurisdiction. Id. at 1125. Thus, once the primary claim was dismissed for lack of jurisdiction, the dismissal carried with it the cross-claim. Id.; see also Westray v. Life, No. 15-3098, 2016 WL 1466540, at *4 (E.D. Pa. Apr. 14, 2016) (distinguishing Fairview and holding that where the defendants' cross-claim against the government was brought under the FTCA, which provides an independent basis for subject matter jurisdiction, supplemental jurisdiction over that cross-claim remains even if the plaintiff's complaint against the government has been dismissed).

U.S.C. § 1346(b).  In turn, I may also exercise supplemental jurisdiction over Plaintiffs' claims against the Temple Defendants in <u>Young I</u> because they are part of the same case or controversy and derive from a common set of facts.  <u>See</u> 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Accordingly, I will deny the United States' Motion to Dismiss the Temple Defendants' cross-claims against the United States in <u>Young I</u> and retain jurisdiction over these claims.

### E.      The Temple Defendants' Motion to Dismiss *Young II*

In a separate Motion, the Temple Defendants seek to dismiss the claims against them in <u>Young II</u> on two grounds.  First, they allege that <u>Young II</u> is duplicative of <u>Young I</u> and Plaintiffs may not maintain two separate actions involving the same subject matter at the same time, in the same court, and against the same defendants.  In light of the procedural posture of this case, however, I decline to dismiss <u>Young II</u> as duplicative.  Plaintiffs previously moved to consolidate <u>Young I</u> and <u>Young II</u>.  The Temple Defendants did not oppose this Motion, and, by order dated May 7, 2019, I directed that both actions be consolidated for purposes of all further proceedings.  As such, the Temple Defendants will not be required to defend two separate actions or be subject to unnecessary duplicity.

Second, the Temple Defendants assert that the claims of the adult Plaintiffs in <u>Young II</u> are untimely as they were filed more than two years after the events at issue.  This argument has significantly more merit.  Under Pennsylvania law, "personal injury to a minor gives rise to two separate and distinct causes of action, one the parent[s]' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for

losses after minority." Hathi v. Krewstown Park Apartments, 561 A.2d 1261, 1262 (Pa. Super. 1989) (quotations omitted). While the two-year statute of limitations on a minor's cause of action that accrues before age eighteen is tolled until the minor turns eighteen years of age, 42 Pa. Cons. Stat. § 5533, this tolling provision does not apply to the parents' claims, which remain subject to the two-year limitations period for negligence in Pennsylvania. Czimmer v. Janssen Pharms., Inc., 122 A.3d 1043, 1060 (Pa. Super. 2015). As noted above, the alleged malpractice in this case occurred no later than March 2, 2016, meaning that the adult Plaintiffs had to file their independent claims by March 2, 2018. Although Young I was timely commenced, Young II was not filed until April 18, 2019, more than one year past the statute of limitations.

Plaintiffs respond that any timeliness concerns are moot because Young II has been consolidated with Young I pursuant to Federal Rule of Civil Procedure 42(a)(2). Plaintiffs, however, misunderstand the scope of Rule 42, which gives courts the authority to consolidate actions involving a common question of law or fact." Fed. R. Civ. P. 42(a). "Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan R. Co., 289 U.S. 479, 496–97 (1933). "Thus, while a consolidation order may result in a single unit of litigation, such an order does not create a single case for jurisdiction purposes." Cella v. Togum Constructeur Ensembleier en Industrie Alimentarie, 173 F.3d 909, 912 (3d Cir. 1999).

Here, the consolidation of Young I and Young II did not extinguish any of the Defendants' substantive rights or entitlement to raise legal defenses, including statute of limitations concerns. Thus, I find that the adult Plaintiffs' claims against the Temple Defendants in Young II must be dismissed as untimely.

**IV.  CONCLUSION**

In light of the foregoing, I will grant the United States' Motion to Substitute in both <u>Young I</u> and <u>Young II</u>.  Upon substitution, I will dismiss the Plaintiffs' claims in <u>Young I</u> against the United States for failure to exhaust administrative remedies, but will retain jurisdiction over both Plaintiffs' claims against the Temple Defendants and the Temple Defendants' cross-claims against the United States.  As to <u>Young II</u>, I will deny the United States' Motion to Dismiss, but will dismiss as untimely the claims of the adult Plaintiffs (Shanisha Young and Atiba Kenyatta) against the Temple Defendants.

An appropriate Order follows.